Essex,
March,
1841.

Goodall
*v.*
Estate of
Rich.

---

Ira Goodall *v.* The Estate of Alzo Rich.

On the first day of December, 1835, R. executed to J. a negotiable note, payable in one year, and on the same occasion and as a consideration for the note, J. delivered R. a deed, and also a writing that whenever R. should re-deliver said deed or re-convey to J., then the note was to be void. J. indorsed and delivered the note to H. for D., and absconded. Immediately afterwards H. informed R. thereof, and R. exhibited said writing and offered to return said deed or to re-convey to J. or to H. and insisted on his right so to do. H. declined to receive the deed and afterwards R. procured the deed from J. to be recorded. *Held,* that the plaintiff could not sustain an action as indorsee of said note.

This was an appeal from a decision of the commissioners appointed to examine and adjust all claims against the estate of Alzo Rich, deceased, allowing a claim in favor of the plaintiff. Joshua Marshall and Jacob Rich are administrators of said estate.

The plaintiff declared against the estate, in assumpsit, on a promissory note, signed by the intestate, dated December 31st, 1835, for one thousand dollars, payable to Jeremiah Jordon, or order, one year from date, and by said Jordon indorsed to John Dewey and by Dewey to the plaintiff.

Plea, non assumpsit, and issue to the country.

On the trial in the county court, the plaintiff offered the note in evidence and having proved its execution and the indorsements, rested his case.

Essex,
March,
1841

Goodall
v.
Estate of
Rich.

The defendants then offered in evidence a contract executed by said Jordan to the intestate of even date with said note, which is, in substance, as follows ;—

'Whereas, I have this day received of Alzo Rich his note
'of one thousand dollars, payable in one year, and in-con-
'sideration of which I have deeded and conveyed to him all
'my right and interest to an act of the legislature, author-
'izing the removal of obstructions in the Nulhegan river,
'passed November 8, 1832; also transferring all my right
'and privilege of driving [floating] pine timber out of the
'Nulhehan river down the Connecticut river to the head of
'the fifteen mile falls, according to the contracts and agree-
'ments made with divers persons at fifty cents per thou-
'sand ;—Now I hereby promise and agree to deliver said
'note to the said Rich on demand, at any time when he will
'convey, re-deed, or deliver said deed to me ; and I promise
'that whenever said Rich shall re-deed or deliver said deed
'to me in a manner that shall convey to me the same [rights]
'which I have this day conveyed to him by said deed, then
'said note is to be null and void and [such re-conveyance to
'me] is to be payment in full of said note.
                                   'JEREMIAH JORDON.'

The defendants also offered the deed referred to in said contract, dated the same 31st day of December, 1835. The plaintiff objected to both the contract and deed, but the objection was overruled and they were read to the jury.

The defendants then introduced testimony tending to prove that the aforesaid deed was the sole consideration for the note in suit ; that, at the time of executing the note and deed, Jordon named a number of persons who were indebted to him for running timber, as stated in said deed, and it was then agreed between Jordon and the intestate that the note should be lodged in the hands of Jesse Hugh, of Maidstone, until the intestate should have time to see the persons so indebted and ascertain what he might realize from the demands against them, determine whether he would confirm said contract or re-deed to Jordon, agreeably to the contract above stated ;— that, within a few days after the making of said contracts, Jordon absconded from the state, and the intestate, on learning that Jordon had absconded, immediately went to the house of said Hugh to ascertain if the note in question had

Essex,
March,
1841.

Goodall
v.
Estate of
Rich.

been left with Hugh, and was there informed, by Hugh, that it had not, and that the intestate then and there, in the presence of Hugh, declared his intention to rescind the contract made between him and Jordon.

The plaintiff then introduced testimony tending to prove that, a few days before Jordon absconded, John Dewey and Jordon went together to the office of Wm. Heywood, Jr. in Guildhall, and then and there made an agreement that the note in question, which Jordon then indorsed in blank, and also a quit claim deed, which Dewey then and there executed to Jordon of a farm of land in Bloomfield, (Jordon, at the same time, executing a deed of said land and a bill of sale of a quantity of timber to Dewey) should be left in the hands of Heywood and there remain for fifteen or twenty days, and that if within that time, Jordon should deliver to Heywood, for Dewey, the sum of fifteen hundred dollars, Heywood was to re-deliver all the papers to Jordon.

The plaintiff's testimony tended further to prove that, on the ninth day of January, 1836, in the absence of Dewey and without his authority or direction, Heywood notified the intestate that the note in suit was indorsed to Dewey and showed the note and blank indorsement thereon to the intestate ; that the intestate then presented the contract of Jordon, above set forth, to Heywood, and offered to deed to Dewey, or any other person, agreeably to the terms of the contract, and deliver up to Dewey, or to Heywood as Dewey's agent, all that the intestate had received as a consideration for the note; but Heywood informed the intestate that he (Heywood) had no authority to receive the papers and refused to accept them.

The testimony of the defendant tended to prove the same offers, made by the intestate to Heywood, to deed to Dewey or Heywood, and deliver the deed, executed by Jordon to the intestate, to Dewey or Heywood, and that the intestate insisted upon his right so to do. The deed from Jordon to the intestate was not, at that time, recorded; but the intestate, afterwards, on the tenth day of January, 1836, caused the deed to be recorded.

There was no testimony tending to prove that either the intestate or Dewey had any knowledge that Jordon intended to abscond, nor that the intestate knew that Jordon had ab-

Essex,
*March,*
1841.

Goodall
*v.*
Estate of
Rich.

sconded until the day when Heywood called on him as above stated; nor that the intestate knew of the indorsement and pledge of the note to Dewey until he was notified thereof by Heywood. It also appeared that the intestate went to the house of Hugh, for the purposes above stated, before he was notified, by Heywood, of the transfer of the note to Dewey. There was no testimony in the case from which the jury would be justified in finding that there was fraud or collusion between the intestate and Jordan, or an intention to give Jordan a false credit by means of said note.

Upon this testimony, the county court stated to the parties that they should instruct the jury to disregard entirely the testimony on the part of the defendants, of the agreement of Jordon to lodge the note with Hugh;—that they should also instruct the jury that if they found that the period of time, from the making of the contract between Jordon and the intestate to the time of the notice by Heywood to the intestate of the indorsement of the note to Dewey, was no more than a reasonable time, under the circumstances, for the intestate to determine whether he would abide by his contract with Jordon, and that if he then elected to re-convey the property conveyed to him by Jordon, in the manner above stated, and so notified Heywood, the defendants would be entitled to a verdict. Whereupon the plaintiff consented to a verdict for the defendants, with liberty to except to such instructions.

The jury having returned their verdict for the defendants, the plaintiff excepted to the decision of the county court.

*W. Heywood, Jr.* for plaintiff.

The defence rests upon the proviso to the first section of the act of 1798, Comp. Statute, p. 144, which provides that the defendant " may plead or give in evidence on trial of any ' such action, (viz. an action in the name of an indorsee) any ' matter or thing which would equitably discharge the defen- ' dant in an action brought in the name of the original ' payee."

Notice to Heywood of Rich's election to rescind the contract was not sufficient. Heywood was then agent of Dew- ,ey for a specified purpose only, and it does not appear that

Essex,
March,
1841.

Goodall
v.
Estate of
Rich.

the notice was ever conveyed to Dewey.   *Adams & Shattuck* v. *Wilder,* 6 Vt. R. 334.

Heywood informed Rich that he had no authority to receive a conveyance nor give up the note.   After this information, why did he not make a proper tender to Dewey.

The acts of Rich did not amount to a rescinding of the contract made between Rich and Jordon.   He merely *offered* to re-deed the property of which he received a conveyance from Jordon and which constituted the consideration of the note.

The contract, signed by Jordon, was, that whenever Rich should re-deed, or deliver to Jordon the deed executed by the latter to Rich, in a manner that would convey to Jordon the same rights Jordon had conveyed to Rich, then the note was to be void, and, by such re-conveyance, paid.

Immediately after making the offer to Heywood, Rich procured the deed to be recorded, which was inconsistent with the desire to rescind the contract.   At any rate such recording made it necessary that Rich should tender a deed to Dewey in order to rescind the original contract, which he has never done.   If this suit were in the name of Jordon, what has Rich or his administrators done that would equitably discharge them ?   *Hunt* v. *Silk,* 5 East, 448.

If Dewey had chosen to give up the note and take a conveyance of the privilege described in the deed referred to, was the notice, given to Heywood, such a rescinding of the original contract that Rich would have been under legal obligations to give up the privileges conveyed to him and receive the note ?   We think not, but that he *could* still hold on to the privileges and affirm the contract.

If the plaintiff is defeated in this action, the administrators of Rich get the property conveyed by the deed for nothing, as they still hold the title to it.   They do not, even at this late day, tender a deed.

Was not the re-conveyance of the privilege specified in the deed, a condition precedent to the giving up of the note ? We insist that it was.

The secret contract from Jordon to Rich, given to defeat a negotiable note, payable on time, was a circumstance from which a jury would be warranted in presuming a collusion between Jordan and Rich to defraud others, or give Jordon

Essex,
March,
1841.

Goodall
*v.*
Estate of
Rich.

a false credit.  By means of this note Jordon procured a credit for its amount, and Rich's administrators ought not now to be permitted to avoid the note.

*J. S. Wells* for defendants.

1. The proviso to the law of 1798, being in force when this transaction occurred, places the plaintiff in the same position the payee would occupy, were he seeking to enforce payment of the note in question.

2. That Rich had a right to rescind the contract cannot be controverted, unless the express agreement of Jordon, as set forth in the instrument co-existent with the note, is disregarded entirely.

Having that right by the contract, and the *extent of the time* when it should be exercised not being fixed in express terms, the question arises *in what time* shall it be done.  If in a *reasonable* time, then it was matter for the jury to settle, and the plaintiff having *consented* to a verdict, under the intimation of the judge that he should submit that question to the jury, has yielded to the defendants the benefit of that finding.

3. If the opinion of the court is at all exceptionable, the defendants, and not the plaintiff should complain, for the agreement of Jordon, made at the same time with the note, should be treated as a condition annexed thereto.  And the note being payable *in a year from its date*, the conclusion is irresistible that Rich was to have *that time* in which to determine whether he would rescind or not, and, as the contract had existed but a few days, the defendants might reasonably complain that they were unreasonably restricted by the court.

4. But if the question, what was *a reasonable time?* was matter of law, and should have been decided by the court, then the plaintiff should not complain, for this court will judge of that matter, and should they determine that a reasonable time had not elapsed, they will not disturb a verdict rendered under a restriction, which gave an advantage to the losing party.  If the verdict is right in justice and equity it should not be disturbed.  *Wilkinson* v. *Payne*, 4 D. & E. 468; *Booden* v. *Ellis*, 7 Mass. R. 507 ; *Goodrich* v. *Walker*, 1 Johns. Cases, 250.

Essex,
*March,*
1841.

Goodall
*v.*
Estate of
Rich.

The opinion of the court was delivered by

COLLAMER, J.—By our former statute, under which this note was made, the maker of a note, when sued by an indorsee, could make the same defence as if sued by the payee, and that law must govern this case. The note of Rich and the contract of Jordon, made at the same time and concerning the same subject matter, constitute one contract. By that contract, whenever Rich gave up the deed from Jordon, or re-deeded, it was in satisfaction of the note. As soon as Rich was notified that his note was in the hands of Heywood, for Dewey, and, within a reasonable time after receiving his deed from Jordon, he elected to abandon the contract and offered to give up the deed, or to re-deed or quit claim ; then and ever after, insisting on his right so to do. This was his right and if he did all that could reasonably be required of him, it should be held sufficient. What more could he have done ? He offered to deed to the holder of the note, and it was declined. Jordan had absconded, and the offer could not be made to him. If the holders of the note wanted more done, they should have demanded it, or at least intimated or suggested it to Rich. Rich could indeed have made and procured to be recorded a deed from him to Jordon ; but it would have been inoperative, as Jordon was not here to receive its delivery. The making and tendering a deed to the holder of the note was a useless formality, as Rich was informed that it would not be received.

It is however insisted, that, by subsequently procuring the deed from Jordon to be recorded, Rich waived his right to rescind or abandon the contract. In order to waive any right, the party must do something which is inconsistent with the right, and not otherwise to be accounted for. For example, had Rich conveyed to another what he received by the deed from Jordon, or, possibly, had he entered on its beneficial use and enjoyment and long held the same, that would have been inconsistent with abandonment. But his procuring the deed from Jordon to be recorded might have been necessary to secure the property for the holders of the note, against the attachments of other creditors of Jordon. At any rate, it did not remove the property from Rich nor deprive him of the power to re-deed and was no way inconsistent with his claim and right so to do.

It is further insisted that there was testimony tending to show a fraudulent design between Rich and Jordon to defraud others, which should have been left to the jury. The only circumstance relied on, however, consists in the giving of a negotiable note. That, however,‚to men who were then acquainted with the existing law, was of no weight. All then knew that negotiable notes were subject to all the defences of non-negotiable paper, and therefore they tended to no deception. They required, in the purchaser thereof, the same diligence and inquiry of the maker as is now required of the purchaser of non-negotiable claims, or negotiable notes uncurrent or long overdue.

Judgment affirmed.